UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| FAIR HOUSING CENTER OF CENTRAL INDIANA, INC., and JENNIFER AND BENJAMIN HENDRICKSON, | ) ) ) ) | |
| Plaintiffs, | ) ) | 4:14 CV 00058-PPS-JEM |
| v. | ) ) | |
| BROOKFIELD FARMS HOMEOWNERS' ASSOCIATION, | ) ) ) | |
| Defendant. | ) ) | |

## OPINION AND ORDER

This dispute arises from a residential real estate transaction that went south after the defendant, a homeowner's association, informed the plaintiff sellers that the sale of their home would violate one of the association's restrictive covenants. Plaintiffs, both the sellers and a non-profit organization that assists people with housing issues, claim that the defendant's action violates the Fair Housing Act. The parties have filed cross motions for summary judgment. (DE's 29 and 51.) Because there are an abundance of fact issues still in dispute, both motions will be **DENIED**.

**Background**

The Hendricksons entered into a contract to sell their home to an organization called the Wabash Center. The Wabash Center intended to use the home as a group home for a group of three disabled adults. At some point, Defendant Brookfield Farms Homeowner's Association found out about the sale and sent the Wabash Center's attorney a letter stating that Wabash's purchase of the home "is in violation of the

existing covenants." (DE 1-2.) The covenant specifically at issue stated that each lot "shall be a residential lot and shall be used exclusively for single family residential purposes." (DE 1-1 at 6.)

After catching wind of this letter, the Hendrickson's attorney sent a letter to the Association's attorney informing them that their attempts to block the sale were prohibited by Indiana law and demanding that the Association "cease all attempts to interfere with the sale and purchase of the home by Wabash Center" and to "withdraw its objection to such purchase in writing by letter to Wabash Center." (DE 1-3 at 1.) More specifically, the letter demanded that the Association "immediately: 1. issue a written statement . . . recanting, rescinding or otherwise nullifying your letter of April 17, 2014; and 2. agree in writing to take no further actions to oppose, sabotage or interfere with the pending sale of the 5115 Flatlake Court property to Wabash Center." (*Id*.)

Around this time, Plaintiff Fair Housing Center of Central Indiana (I'll call it "FHCCI" for short) got involved in the dispute. FHCCI is a non-profit advocacy organization that seeks to ensure equal housing opportunities in Indiana. (DE 1 at 4.) Four days after the Hendrickson's attorney sent his letter to the Association, FHCCI sent one of its own stating that the Association's proposed action was unlawful both under the Fair Housing Act and pertinent case law construing it. (DE 1-4 at 1.) FHCCI stated that "[a]pproval of this sale could also be viewed as a reasonable accommodation for a disability. We would appreciate your reconsideration of the interpretation of the restrictive covenant, in light of established legal precedent, to allow the Wabash

2

Center's purchase of the home to continue." (*Id*. at 2.)

About a week later, the Association's attorney sent a letter to the Hendrickson's attorney stating that the Association had "resolved to refrain from legal action to block the sale of the 5115 Flatlake Court in Lafayette, Indiana." (DE 1-5 at 1.) But this statement of its intent to refrain from legal action came with something of a hitch. The Association also stated, "[b]e advised, however, that the Association has no authority to bar individual Owners from seeking injunctive or other relief under the fee-shifting provision recited in the Declaration, Art. VIII (A). Nor does it appear that the Association may bar future action by any party under the 'Delay or Failure to Enforce' provision of the Declaration, Art. VIII (C)." (*Id*.) The Association further stated that the annual meeting of the owner-members of the Association would take place the following week. (*Id*.)

The Hendricksons attended that meeting, but did not speak or make any requests of the Association at that time. (DE 45 at 6-7.) Shortly thereafter, the Hendrickson's deal with the Wabash Center fell through and their house went back on the market. The Hendricksons ultimately sold their home to a different buyer in July 2014 but the sale was for $7,000 less than their agreement with Wabash.

Plaintiffs filed suit against the Association on July 10, 2014 claiming that the Association's actions are discriminatory in violation of the FHA. The parties have now filed cross motions for summary judgment. Plaintiffs seek partial summary judgment, claiming that the Association failed to offer a reasonable accommodation under the FHA and that the Association interfered with Plaintiffs' exercise of their rights under

3

the FHA. (DE 29-30.) Plaintiffs concede, however, that a trial would still be needed to determine the amount of damages they suffered. The Association, on the other hand, asks me to find that it provided a reasonable accommodation to the Hendricksons by performing the actions requested in their letters. (DE 51-52.)

**Discussion**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Fair Housing Act states that it is unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available." 42 U.S.C. § 3604(f)(1)(B). The FHA further clarifies that "discrimination includes . . . a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

Plaintiffs claim that the Association violated these sections of the FHA by failing to provide Plaintiffs with a reasonable accommodation after it found that the sale would violate the restrictive covenant barring group homes. Plaintiffs further claim that the Association improperly interfered with the sale of the home. The Association of course

4

disputes these claims and each party has now asked for summary judgment. I'll address each of these areas in turn.

In general, "whether an accommodation is 'reasonable' is a question of fact, determined by a close examination of the particular circumstances." *Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 896 (7th Cir. 1996); *see also Dadian v. Village of Wilmette*, 269 F.3d 831, 838 (7th Cir. 2001) ("Whether a requested accommodation is reasonable is highly fact-specific, and determined on a case-by-case basis by balancing the cost to the defendant and the benefit to the plaintiff."). "An accommodation is reasonable if it is both efficacious and proportional to the costs to implement it," but is unreasonable if it is financially burdensome or "requires a fundamental alteration in the nature of the program." *Oconomowoc Residential Programs, Inc., v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002).

I should note at the outset that the posture of this case is a little different from most cases dealing with a request for reasonable accommodation. Typically, a plaintiff requests some action on the defendant's part and the defendant refuses, claiming that the accommodation requested was unreasonable. Here, the Hendricksons requested what they termed as a reasonable accommodation and the Association arguably complied with that request (though whether it actually complied will be a question for the jury). One might be tempted here to say that ends the inquiry, as the Association says I should. But the Seventh Circuit has found that under these circumstances, what a plaintiff labels as "reasonable" doesn't carry the day. It's still up to the fact-finder to decide whether the accommodation requested was actually reasonable.

5

For example, in *Jankowski*, a disabled individual asked his apartment complex for a reasonable accommodation in the form of either increasing the number of handicap parking spaces in the parking lot, or assigning him a space closer to the building. 91 F.3d at 894. The complex responded by adding two new handicap spaces. *Id*. at 895. Even so, the court found that the complex had not provided a reasonable accommodation since even with the new parking spaces, the complex had only four handicapped spaces for the 27 residents who had handicap stickers or tags for their cars. *Id*. at 896. In other words, the plaintiff wasn't simply stuck with what he asked for since the ultimate question is whether the defendant has provided a reasonable accommodation. Thus, even if the Association could prove that it complied with Plaintiffs' request (and the parties dispute whether that's even the case), a jury would still need to decide whether the course of action taken was actually reasonable.

Ultimately, there are too many factual disputes here for me to grant summary judgment for either side. The parties paint two very different pictures of what happened. From the Association's perspective, after it first informed the Hendricksons that the sale of their home to the Wabash Center would violate the restrictive covenants preventing group homes, the Hendricksons then requested an accommodation in the form of a written commitment from the Association not to interfere with the sale. In the Association's view, it complied with this request by agreeing in writing not to pursue legal action to block the sale of the home to Wabash. Thus, the Association contends that it has already provided Plaintiffs with a reasonable accommodation and no further action is needed, particularly when nothing further was asked of it.

6

Plaintiffs, on the other hand, dispute this view of the facts. They instead claim that the Association's alleged compliance with their request was less than genuine, particularly when the Association made a point of stating it could not prevent a homeowner from asserting a legal claim against Plaintiffs. And even more, the Association held onto its position that the covenant was non-discriminatory in nature. To Plaintiffs, this "accommodation" was no accommodation at all – they had sought to avoid any legal repercussions from the sale and instead were being faced with possibly more. And ultimately, this is the reason the Wabash Center pulled out of the deal. Plaintiffs further argue that by asking the Association to reconsider its interpretation of the covenant, that they were really asking for the covenant to be changed. The Association denies any such request was ever made, and argues that if that's really what Plaintiffs wanted, then they needed to make that request at the annual meeting, which they didn't do.

The answer to whether the Association provided Plaintiffs with a reasonable accommodation hinges on figuring out what really happened – *e.g.* was the Association's letter "complying" with the request really just a veiled threat not to continue with the sale? Did Plaintiffs ever ask for the Association to change the covenant? Was the accommodation originally requested even reasonable to begin with? And sorting through what really happened here is the jury's job. In essence, there are too many open fact questions here for me to grant summary judgment to either side.

Further, because the question of whether the Association has provided a reasonable accommodation must go to the jury, so too must Plaintiffs' claim that the

Association interfered with the sale of its home. That latter claim arises out of Section 3617 of the FHA which states that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. Proving an interference claim under Section 3617 requires first proving a discrimination claim under Section 3604 where the conduct that allegedly violated Section 3617 is the same conduct by the same persons alleged to have violated Section 3604. *South-Suburban Hous. Ctr. v. Greater S. Suburban Bd. of Realtors,* 935 F.2d 868, 886 (7th Cir. 1991). Since that's the case here and since Plaintiffs haven't yet proven a violation of Section 3604, this latter claim will have to go to the jury, as well.

**Conclusion**

For the above reasons, both the Plaintiffs' and Defendant's motions for summary judgment (DE's 29, 51) are **DENIED**.

**SO ORDERED**.

ENTERED: February 8, 2016

s/Philip P. Simon  
PHILIP P. SIMON, CHIEF JUDGE  
UNITED STATES DISTRICT COURT